## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal Case No. 18-cr-42 (RMC)** |
| v. | : | |
| | : | |
| **MARCEL VINES,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Sentencing Memorandum as to defendant Marcel Vines (the "Defendant"). At just 22 years old, the Defendant is already in a criminal history category of IV and has shown a pattern of non-compliance with court orders. Despite being given multiple opportunities at rehabilitation, the Defendant has wasted them. In the instant case, the Defendant was given an opportunity to significantly reduce the length of his incarceration through placement into a Halfway House and abused it. The Defendant warrants no variance from the United States Sentencing Guidelines and the government requests that the Court sentence the Defendant to 10 months imprisonment, followed by three years of supervised release.

## I.      Factual Background

On June 17, 2016, the Defendant was convicted of Possession with the Intent to Distribute a Controlled Substance (PCP) and Unlawful Possession of a Firearm (Prior Conviction) in the District of Columbia Superior Court, case number 2015-CF2-015181. District of Columbia Superior Court Judge Neal Kravitz sentenced the Defendant to 16 months incarceration on the charge of Possession with the Intent to Distribute a Controlled Substance (PCP) and 18 months

incarceration on the charge of Unlawful Possession of a Firearm (Prior Conviction), to run consecutively, followed by five years and three years of supervised release, respectively.

The Defendant was serving his sentence at the Federal Correctional Institution in Fairton, New Jersey.   As part of the Defendant's sentence, he was found eligible to complete the remainder of his sentence at the Residential Reentry Center in Washington, D.C. (Hope Village, Inc., 2840 Langston Place, S.E., Washington, D.C.) (hereinafter, "Hope Village").

On October 2, 2017, the Defendant signed a Furlough Application acknowledging his understanding of the terms of the furlough release conditions and transfer to Hope Village.   The Defendant's Conditions of Furlough included the Defendant's agreement that while on furlough, he could be subject to prosecution for escape if he failed to return to the institution at the designated time.

On November 14, 2017, the Defendant arrived at Hope Village.   On December 28, 2017, the Defendant signed out of Hope Village on a pass at 0905 hours with a return time of 1200 hours. The Defendant did not return to Hope Village by 1200 hours on December 28, 2017, nor did he return to Hope Village at a later time or date.    At the time of the Defendant's failure to return to Hope Village, he was in the custody of the Attorney General, or confinement in an institution where the prisoner is confined by the direction of the Attorney General.

On January 5, 2018, the Defendant was arrested on a D.C. Superior Court arrest warrant charging him with Robbery while Armed based on an incident that occurred December 8, 2017. PSR at ¶ 38.   On February 13, 2018, after a preliminary hearing, D.C. Superior Court Judge Errol Arthur found that the government established probable cause to believe that the Defendant committed the offense and ordered the Defendant held without bond.   On April 11, 2018, a D.C.

Superior Court Grand Jury indicted the Defendant on five counts, including Robbery while Armed, Possession of a Firearm During the Commission of a Crime of Violence, and Assault with a Dangerous Weapon.   On May 16, 2018, after a jury trial, the Defendant was found not guilty in that matter.

On February 27, 2018, while the Defendant's D.C. Superior Court matter was pending, a Grand Jury of the United States District Court for the District of Columbia indicted the Defendant on one count of Escape from Custody, in violation of Title 18, United States Code, Section 751(a).

On May 18, 2018, the Defendant plead guilty to Escape from Custody, in violation of Title 18, United States Code, Section 751(a).

## II.    Sentencing Considerations

The government agrees with the Pre-Sentence Report writer (Ms. Sherry Brandon) that the Defendant's Base Offense Level should be 13, PSR at ¶20, and the Defendant's Total Offense Level is 7, PSR at ¶28.   The Defendant's Criminal History Category is IV, PSR at ¶35. Therefore, with a Total Offense Level of 7, and a Criminal History Category of IV, the Defendant's Guidelines range is 8-14 months imprisonment.   PSR at ¶65.

### A.    Sentencing factors under 18 U.S.C. §3553

In sentencing this Defendant, the Court must take into account the factors set forth in 18 U.S.C. §3553(a), as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

(i) issued by the Sentencing Commission ...; and

(ii) that, . . . are in effect on the date the defendant is sentenced; ...

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission ... and

(B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).

**B.      Sentencing Recommendation**

In applying the § 3553 sentencing factors to the Defendant's case, a sentence of 10 months

imprisonment, followed by three years of supervised release, is a fair and appropriate sentence. The government's sentencing recommendation represents a sentence below the mid-point of the Guidelines range, after the Defendant received credit for acceptance of responsibility.   PSR at ¶27.

First, the Court must consider the nature and circumstances of the offense.   The Defendant walked away from a halfway house.   At first glance, the conduct may appear minimal. However, the Defendant was serving lengthy prison sentences for narcotics trafficking and firearms offenses at the time he walked away.   During the period of his departure, from December 28, 2017 until his arrest on January 5, 2018, the Defendant's whereabouts were unknown to employees of the Halfway House who were in charge of monitoring him.

After walking away from the Halfway House the Defendant did not voluntarily return. Rather, he was arrested on a D.C. Superior Court arrest warrant charging him with an armed robbery that occurred on December 8, 2017 (*i.e.*, while the Defendant was serving his sentence at the Halfway House).[1]   PSR at ¶38.   Then, a D.C. Superior Court Grand Jury indicted the Defendant on charges of Robbery while Armed and related offenses committed while at the Halfway House.[2]   While the Defendant was found not guilty of that offense after a jury trial, the

---

[1]  Apparently, the Defendant returned to the Halfway House after committing this offense.

[2]  It is a well-established principle of law that a trial court may consider a wide range of information, including acquitted conduct, in fashioning an appropriate sentence. *See*, *e.g.*, *United States v. Bernard*, 757 F.2d 1439, 1444 (4th Cir.1985) (no due process problem where sentencing judge in exercising his discretion relied on evidence with respect to crimes of which defendant was acquitted); *United States v. Campbell*, 684 F.2d 141, 152 n. 19 (D.C. Cir. 1982) (noting that "[t]he cases uniformly allow consideration of prior acquittals" by sentencing judge); *United States v. Bowdach*, 561 F.2d 1160, 1175 (5th Cir.1977) (sentencing judge may consider evidence of crimes for which a defendant has been indicted but not convicted); *United States v. Lee*, 540 F.2d 1205, 1210–11 (4th Cir.), cert. denied, 429 U.S. 894 (1976) (sentencing judge may consider evidence

government prosecuted the Defendant based on its evidence that he committed the offense.    In sum, after serving substantial prison sentences for narcotics trafficking and firearms offenses, and being released to a reentry program where he was to complete the remainder of his sentence, a D.C. Superior Court Judge and a D.C. Superior Court Grand Jury found probable cause to believe that the Defendant violated the law again.    And, the Defendant violated the law in the instant case.    All of this occurred while the Defendant was supposed to be serving his sentence.    This is a clear indication that the Defendant will continue to violate the law.

Next, the Court must consider the history and character of the Defendant.    The Defendant's contact with the criminal justice system started at age 16.  PSR at ¶29.   He has multiple juvenile adjudications.    For each juvenile adjudication, his performance on supervision was atrocious.   He tested positive for PCP, left facilities without permission, failed to complete his community service, and violated his curfew.    PSR at ¶29.

The Defendant's criminal conduct has only increased since reaching adulthood.    He has a 2015 conviction for Attempt Unlawful Possession of Liquid PCP for which he received a sentence under the Youth Rehabilitation Act.    PSR at ¶31.   In the Possession with the Intent to Distribute PCP and Unlawful Possession of a Firearm cases, PSR at ¶32, the Defendant again failed to comply with the conditions of his sentence, which gives rise to the instant case.    Apart from the Defendant's conduct in the instant case, his behavior while in the custody of the Bureau

---

obtained in violation of Fourth Amendment); *United States v. Marines*, 535 F.2d 552, 554 (10th Cir.1976) (sentencing judge may consider evidence of courts in an indictment which had been dismissed pursuant to plea bargain); *United States v. Sweig*, 454 F.2d 181, 184 (2d Cir.1972) ("just as the sentencing judge may rely upon information as to crimes with which the defendant has been charged but not tried, [citation omitted], so here the judge could properly refer to the evidence introduced with respect to crimes of which defendant was acquitted.").

of Prisons was also dismal, having incurred numerous disciplinary infractions.   PSR at ¶31.

Based on the Defendant's pattern of noncompliance, the government believes that the Defendant

will continue to violate the law and disregard the conditions this Court places on his sentence.

The Defendant argues that his PTSD somehow contributed to his conduct in this case.

There is some evidence that the Defendant may suffer from PTSD.   PSR at ¶49.   However, the

claim that the Defendant's PTSD caused him to voluntary sign-out of the Halfway House and then

not return is a non-sequitur.    Of course, the Defendant provides no support to establish any causal

connection whatsoever between the two, and the government believes that such a claim does not

mitigate the Defendant's conduct.

Lastly, the Court should consider the need to afford adequate deterrence to criminal

conduct.    In sentencing the Defendant, the Court should seek to achieve a message to the

Defendant, others, and the community that the repeated violation of society's norms and court

orders will not be tolerated.    In this case, because of the Defendant's repeated violation of his

conditions of release and abuse of the benefits given to him, including intentional violation of court

orders, deterrence is an important factor to consider in sentencing.

A sentence of time-served, as the Defendant requests, does nothing to deter him, or others,

from following the rules, whether they be the Court's, the Bureau of Prisons' or the Halfway

House's.   The Defendant began serving his sentence in this case on June 14, 2018.   *See* PSR at

p.11.   Therefore, a sentence of time-served would mean a sentence of less than one month, a

seven (7) month departure below the Guidelines.   The Defendant's criminal history, including

his history of a lack of compliance both while serving a sentence and when under court-

supervision, demonstrate that he is not an individual who deserves a variance, let alone the

substantial one he now requests.

　　　　For these reasons, the government requests that the Court sentence the Defendant above the bottom of the Guidelines, to 10 months imprisonment, followed by three years of supervised release.

.

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　Jessie K. Liu
　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　David Misler
　　　　　　　　　　　　　　　　D.C. Bar No. 991475
　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　555 4th Street, NW, Room 5828
　　　　　　　　　　　　　　　　Washington, D.C. 20530
　　　　　　　　　　　　　　　　(202) 252-7164
　　　　　　　　　　　　　　　　David.Misler@usdoj.gov